IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ODELL MCDANIEL, as Personal Representative of the Estate of LONNIE McDANIEL | }<br>}<br>} |
| Plaintiff, | } CASE NO. CV-00-BE-2630-W |
| v. | } |
| CONSECO HEALTH INSURANCE COMPANY, et al., | } |
| Defendants. | } |

**MEMORANDUM OPINION**

This case is before the court on the Defendant's Motion to Reconsider filed November 20, 2001, addressed to the Order denying its Motion for Summary Judgment. That Order of November 15, 2001 was entered prior to the transfer of this case to the undersigned judge.

**I. Jurisdiction**

Because this case was reassigned, the undersigned was unclear as to whether an evaluation had been made regarding the propriety of removal and the exercise of jurisdiction. The court has now reviewed the file and concluded that removal was proper and that diversity jurisdiction does exist. Defendant Twilla Cummings was fraudulently joined and is now DISMISSED from the case pursuant to the Order entered simultaneously with this Memorandum Opinion.

**II. Undisputed Facts**

On or about December 16, 1982, Odell McDaniel purchased a cancer insurance policy

from Capitol American Life Insurance Company, now known as Conseco Health. Pl.'s. Response Opp'n S.J. 2 (Sep. 20, 2001). Mr. McDaniel paid premiums under the contract for cancer insurance from the date of purchase until the time of his death in 1988. Pl.'s Response Opp'n S.J. 5 (Sep. 20, 2001). The policy at issue was a limited policy that provided coverage only if "a licensed physician through microscopic examination of fixed tissue positively diagnose[d] the cancer," or cancer was positively diagnosed post-mortem. Pl.'s Response Opp'n S.J. 2 (Sep. 20, 2001).

Mr. McDaniel was clinically diagnosed with cancer in his left lung sometime around September 03, 1998. Pl.'s Response Opp'n S.J. 3 (Sep. 20, 2001). However, because of his frail health, his doctor advised against performing a biopsy to confirm the cancer. Pl.'s Response Opp'n S.J. 3 (Sep. 20, 2001). Mr. McDaniel also suffered from stricture of the esophagus, which necessitated the insertion of a stint to facilitate Mr. McDaniel's ability to eat and breathe. Pl.'s Response Opp'n S.J. 8-9 (Sep. 20, 2001). Mr. McDaniel was last admitted to the hospital on or about September 25, 1998 before he went home to die on October 13, 1998. Def.'s Mot. S.J. 5-6 (Aug. 30, 2001). His autopsy confirmed that he had squamous cell carcinoma, as his doctors had previously clinically diagnosed. Pl.'s Response Opp'n S.J. 3 (Sep. 20, 2001).

After Mr. McDaniel's death, Mrs. McDaniel sent claims information to Conseco Health. Pl.'s Response Opp'n S.J. 3 (Sep. 20, 2001). When Conseco did not respond, Mrs. McDaniel telephoned to check on the status of her claim and Conseco told her that it had not received her claim. Mrs. McDaniel sent the information again only to be told that Conseco had still not received her claim. Mrs. McDaniel sent the claim a third time by registered mail and received the denial of the claim sometime after. Pl.'s Response Opp'n S.J. 3 (Sep. 20, 2001).

Conseco initially asserted that Mrs. McDaniel was not entitled to benefits because the

diagnosis in the claim was not one that was covered by the policy. Pl.'s Response Opp'n S.J. Ex. J (Sep. 20, 2001). However, subsequent to the filing of this lawsuit, Conseco has provided other reasons for denial, specifically, that the diagnosis of cancer was never made prior to Mr. McDaniel's death and that he did not have a terminal admission to the hospital. Def.'s Mot. S.J. 2 (Aug. 30, 2001).

### III. Standards for Evaluating a Motion for Summary Judgment

In a Motion for Summary Judgment, the burden rests on the moving party to establish that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 471 U.S. 317, 322 (1986). The court must also consider the facts in the light most favorable to the non-moving party. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). The court finds that, on most decisive issues, no material factual issues exist. However, the court has determined that the defendant Conseco Health Insurance Company is not entitled to judgment as a matter of law on the plaintiff's claim for breach of contract (Count One) or on the plaintiff's claim for bad faith failure to pay (Count Two). As to Count Three for fraud and suppression, counsel for the plaintiff conceded at oral argument on October 26, 2001 and confirmed in a letter dated December 06, 2001 that the summary judgment was due to be granted.

### IV. Breach of Contract

To establish liability for breach of contract, the plaintiff must establish the following: "'(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.'" *Employees' Benefit Assoc. v. Grissett,* 732 So. 2d 968, 975 (Ala. 1998), *quoting Southern Medical Health Systems,*

*Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995). The defendant does not contest the validity of the insurance contract or that the insured paid premiums and properly submitted a claim. Presumably, the defendant would not challenge damages IF the contract were breached, although the plaintiff has offered no proof as to the specific amount of benefits due under the contract. However, the defendant asserts that it did not breach the insurance contract because the plaintiff was not entitled to benefits under the contract of insurance.

In its original motion, the defendant argued that it owed no payment under the policy because the "plaintiff failed to establish that Mr. McDaniel was positively diagnosed with cancer prior to his death pursuant to the clear and express terms of his contract of insurance and, therefore, Conseco Health is entitled to summary judgment on the plaintiff's breach of contract claim." Def.'s Mot. S.J. 5 (Aug. 30, 2001). If the policy required a diagnosis prior to death, the defendant might be correct. However, the "clear and express terms" of the policy do not require such a diagnosis prior to death, but make specific provision for a post mortem diagnosis of cancer with resultant payment of benefits. See Policy, p. 1.

The defendant then asserts that the benefits under its cancer policy would only be available for Mr. McDaniel if he had died during his last hospital stay because no pre-death positive diagnosis of cancer was made based on a pathology report. Def.'s Mot. S.J. 5-6 (Aug. 30, 2001). The applicable policy language states:

> Whenever the requisite positive diagnosis of cancer can only be made post-mortem, the Company shall assume retroactive liability, and its liability shall be limited to the period of time beginning with the date of the terminal admission to the hospital but in no event to exceed the portion of charges subject to indemnity incurred during the forty-five (45) days prior to the date of the demise of the insured.
>
> A chest x-ray revealed a mass in Mr. McDaniel's right lung, which his doctor suspected

was cancerous. Pl.'s Response Opp'n S.J. 2-3 (Sep. 20, 2001). Because of his precarious health, Mr. McDaniel's physician advised against a biopsy. Pl.'s Response Opp'n S.J. 3 (Sep. 20, 2001). Therefore, prior to his death, the only diagnosis of cancer was a clinical one, and did not meet the policy requirement to trigger coverage. Upon his death, the autopsy report revealed "squamous cell carcinoma" in his lung. Id. The defendant acknowledged that the post mortem autopsy did confirm cancer and met the policy requirement. Def.'s Mot. S.J. 2 (Aug. 30, 2001). The autopsy report satisfies the policy requirement of a diagnosis of cancer based on a "microscopic examination of fixed tissue" and therefore sufficiently triggers coverage under the policy.

However, defendant asserts that the "post mortem diagnosis" clause renders coverage ineffective because Mr. McDaniel did not die while in the hospital. In other words, the defendant argues that the reference to the "terminal admission to the hospital" in the "post mortem diagnosis" clause requires that the insured actually die while hospitalized to trigger coverage.

The policy language should not be given such a narrow interpretation. When interpreting the language of an insurance policy, the court must give the terms of the policy their clear and plain meaning. *Criterion Ins. Co. v. Anderson*, 347 So. 2d 384, 388 (Ala. 1977); *Canal Ins. Co. v. Stidham*, 205 So. 2d 516, 519 (Ala. 1967); *Provident Life & Accident Ins. Co. v. Persons*, 396 So. 2d 108, 109 (Ala. Civ. App. 1981). In addition, contracts of insurance should be construed "liberally in favor of the insured and strictly against the insurer," and restrictions on coverage should be construed narrowly in favor of coverage. *United Services Auto Assoc. v. Vogel*, 733 So. 2d 401, 403 (Ala. 1998); *Scottsdale Ins. Co. v. Town of Orange Beach*, 618 So. 2d 1323, 1325 (Ala. 1993).

The Alabama Supreme Court explained the purpose behind these rules of policy construction in *Vogel*:

> An insurance policy is written by the insurance company. Most insureds depend upon the company to provide the coverage they seek. When doubt exists whether coverage is provided, *the language used by the insurer must be construed for the benefit of the insured.*

*Vogel,* 733 So. 2d at 403 (emphasis added) (quoting *Aetna Casualty & Surety Co. v. Chapman,* 240 Ala. 599, 200 So. 425 (1941).

The critical policy language at issue in this case is the language in the post-mortem clause:

> Whenever the requisite positive diagnosis of cancer can only be made post mortem, the Company shall assume retroactive liability, and its liability shall be limited to the period of time beginning with the date of the *terminal admission to the hospital* but in no event to exceed the portion of charges subject to indemnity incurred during the forty-five (45) days prior to the date of the demise of the of the Insured. (Emphasis added).

Although the parties urge different meanings of the key phrase "terminal admission to the hospital," the court finds that the language is not ambiguous. Merely because the parties urge conflicting interpretations of language does not compel a finding of ambiguity. See *Woodall v. Alfa Mut. Life Ins. Co.,* 658 So. 2d 369, 371 (Ala. 1995), *quoting Gregory v. Western World Ins. Co.,* 481 So. 2d 878, 881 (Ala. 1985).

The plain and generally accepted understanding of "terminal" means "last member of a series or succession;" or " a morbid condition forming the final stage of a fatal disease." Oxford English Dictionary (2d ed. 1989). Indeed, defendant argues that the "clear and plain meaning of the term 'terminal' is 'leading ultimately to death: FATAL <~cancer>.'" (Def.'s Mot. Reconsider 12.) The court agrees with this definition from Webster's Ninth New Collegiate Dictionary, p. 1217 (1991). However, a hospital admission may *lead to death* without requiring that the patient actually remain in the hospital to die. Interpreting the post-mortem clause to require that the insured remain in the hospital to die, rather than going home to die in comfort, gives the clause a

strained and implausible reading. Such an interpretation could lead to a finding that such requirement violated public policy. Such requirement would increase the costs of medical treatment and could prolong the agony of a terminally ill insured and adversely affect the insured's right to die with dignity surrounded by loved ones in the comfort of his home. The insured and his family should not be forced to make decisions concerning the comfort of a dying man with concern about forfeiting insurance benefits if they decide that dying at home is in the best interest of the insured.

The phrase "terminal admission to the hospital" should not be read as determining coverage. The diagnosis of cancer by a microscopic examination of fixed tissue determines coverage. See Policy, 2A. The plain language of the post mortem diagnosis clause reflects that the terminal admission to the hospital sets the time frame or limit for payment of benefits. When a pathological diagnosis of cancer is made post mortem, the coverage period only begins to run from the date of the insured's last hospitalization before death, and retroactive benefits are limited to a maximum of 45 days. When the phrase "terminal admission to the hospital" is read in the context of the whole paragraph, the meaning becomes crystal clear: the phrase's only purpose is to set the time limit for calculating benefits. The court, therefore, concludes that the plaintiff presented sufficient evidence regarding entitlement to benefits triggered by the post-mortem clause to defeat defendant's Motion for Summary Judgment.

The defendant also contends that it owes no benefits because Mr. McDaniel did not receive "definitive treatment of cancer" as required by the policy. Def.'s Mot. S.J. 6-7 (Aug. 30, 2001). According to David Graham, Manager of Claims Administration, the Conseco policy only pays benefits for treatments directly aimed at combating cancer, such as chemotherapy and radiation. (See Depo. of David Graham 56). The policy limits its coverage to "loss resulting

from definitive cancer treatment, including only *direct extension*, metastic spread (and/or its direct effects) or recurrence . . . This Policy does not cover any other disease or sickness or incapacity." (Emphasis added). Again, the reading of this clause urged by the defendant is unduly narrow and constrained. The policy itself covers benefits other than chemotherapy and radiation. (See Policy, p.2, "Schedule of Benefits For Such Sickness.")

The defendant argues that because Mr. McDaniel was not diagnosed with cancer during his life, he could not have received treatment for cancer. Def.'s Mot. S.J. 7 (Aug. 30, 2001). Counsel ignores two critical points: Mr. Bailey *was diagnosed* with lung cancer while he was alive, although the diagnosis was a clinical one that did not meet the policy requirement; and the policy provides coverage for loss resulting from "direct extension" of the cancer. Although Mr. Bailey did not have a pathological diagnosis of cancer during his life, his doctors did make a clinical diagnosis of cancer that the autopsy report confirmed. The medical records reflect the doctor's concern that the cancerous mass was constricting the esophagus. The constriction of the esophagus appears to be a "direct extension" of the lung cancer and, therefore, would qualify for coverage under the plain language of the policy.

Only by adopting the unreasonably narrow and restrictive interpretations urged by defendant for other-wise clear and unambiguous policy language could the court grant the defendant's motion for summary judgment on the breach of contract count. To apply such a narrow interpretation to coverage provisions would violate Alabama law regarding interpretation of insurance policies. The court refuses to do so. The language of the policy does not clearly limit coverage to Conseco's narrow interpretation; therefore, the court cannot construe the policy to deny coverage to plaintiff. The plain language of the policy demonstrates that the defendant is not entitled to judgment as a matter of law on the breach of contract count. Therefore, the court

DENIES the motion for summary judgment as to the breach of contract claim in Count Two of the Complaint.

### V. Bad Faith

Under Alabama law, liability for bad faith failure to pay is based on either "(1) the defendant's failure to pay the claim, with no lawful basis for the refusal, coupled with the defendant's knowledge of the fact that it had no lawful basis or (2) the defendant's intentional failure to determine whether there was any lawful basis for such refusal." *Employee's Benefit Assoc. v. Grissett*, 732 So. 2d 968, 976 (Ala. 1998); *see Chavers v. National Sec. Fire & Cas. Co.*, 405 So. 2d 1, 7 (Ala. 1981). To establish a claim for bad faith failure to pay an insurance claim, the plaintiff must prove:

> "(a) an insurance contract between the parties and a breach thereof by the defendant;
> (b) an intentional refusal to pay the insured's claim;
> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason to refuse to pay the claim;
> (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim."

*National Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982).

In *National Savings Life Insurance Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982), the Alabama Supreme Court recognized the distinction between the "normal" bad faith claim and the "abnormal" claim. The "normal" claim involves proof of elements (a) through (d) listed above, while the "abnormal" case involves proof of requirement (e). *Grissett*, 732 So. 2d at 976. In the "normal" bad faith case, the plaintiff must be entitled to a pre-verdict judgment as a matter of law on the contract claim to be entitled to present the bad faith claim to a jury. *Dutton*, 419 So. 2d at

1362. If the plaintiff's evidence shows that the defendant recklessly or intentionally failed to adequately investigate the claim or submit its investigation to a "cognitive evaluation," the plaintiff need not be entitled to a judgment as a matter of law on the contract claim to submit the bad faith claim to a jury. *Grissett*, 732 So. 2d at 976; *Blackburn v. Fidelity & Deposit Co. of Maryland*, 667 So. 2d 661, 673 (Ala. 1995); *Thomas v. Principal Financial Group*, 566 So. 2d 661 (Ala. 1995).

In this case, the plaintiff apparently rests her bad faith claim on the "normal" requirement that the defendant knew it had no debatable reason to deny her claim. See Pl.'s Response. Opp'n S.J. 10-11 (Sep. 20, 2001). Plaintiff also argues, however, that the defendant did not properly investigate and process the plaintiff's claim. See Pl.'s Response Opp'n S.J. 13 (Sep. 20, 2001). Certainly a valid argument can be made that the defendant did not subject the plaintiff's claim to cognitive review when it denied the claim based on no diagnosis of a covered disease when the autopsy report did confirm cancer. Under either theory of bad faith, however, the plaintiff has presented sufficient evidence to defeat the defendant's motion for summary judgment.

The defendant argues that it is entitled to summary judgment on the bad faith claim because, inter alia, it had a reasonably legitimate basis for denying the plaintiff's claim. Only the unduly restrictive and strained reading of the policy urged by defendant creates such a debatable reason for denying the claim. An insurance company cannot rely on ambiguous policy language to create a debatable reason for denying a claim; to hold otherwise would give insurers an incentive for crafting ambiguous language. *Blackburn*, 667 So. 2d at 669; *Grissett*, 732 So. 2d at 976-7. Nor can an insurer contort the plain meaning of contract language to support a denial of a claim and rely on that distortion of meaning to defeat a claim of bad faith.

In short, the defendant has failed to establish that it is entitled to summary judgment as a

matter of law on the plaintiff's claim for bad faith. Therefore, the motion for summary judgment must be **DENIED** as to Count Two, the bad faith claim. A separate order will be entered contemporaneously.

**DONE** and **ORDERED** this 12th day of February, 2002.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE